AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Markell Bryan Murell Griffin | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

Case No.

2:25-mj-02160-DUTY

LODGED
CLERK, U.S. DISTRICT COURT
4/10/25
CENTRAL DISTRICT OF CALIFORNIA
BY: ____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
4/10/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ____ clee ____ DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____February 5, 2025_____ in the county of _____Los Angeles_____ in the _____Central_____ District of _____California_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |

This criminal complaint is based on these facts:

Please see attached affidavit

☑ Continued on the attached sheet.

_____/s/_____
*Complainant's signature*

Robert C. McElroy, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____April 10, 2025_____

_____
*Judge's signature*

City and state: _____Los Angeles, CA_____

Hon. Steve Kim, U.S. Magistrate Judge
*Printed name and title*

*AUSA:* Mirelle Raza x6058

## AFFIDAVIT

I, Robert C. McElroy, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of criminal complaints and arrest warrants for MARQUISE JOHNY BRANDON GRIFFIN ("MARQUISE") and MARKELL BRYAN MURELL GRIFFIN ("MARKELL") for violating 18 U.S.C. § 2119 (Carjacking) (the "Subject Offense").

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaints and arrest warrants and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since October 2019.  I am currently assigned to the Los Angeles Field Division Lancaster Resident Agency, which is responsible for investigating violent crimes, white collar crimes, and crimes against children in the cities that fall within the Lancaster Resident Agency's area of responsibility.

4.    Since becoming an FBI SA, I have received formal
training at the FBI Training Academy in Quantico, Virginia.
This training included segments on conducting criminal
investigations, narcotics identification, organized crime, and
other law enforcement topics.  During the time I have been
employed by the FBI, I have participated in investigations
relating to kidnapping, extortion, criminal threats, fugitives,
homicide, Hobbs Act robberies, murder-for-hire, and other
violent crimes.  I have participated in many aspects of criminal
investigations, such as, but not limited to, reviewing evidence,
the issuance of subpoenas, the analysis of pen and trap and
trace records, consensually monitored telephone calls,
conducting physical and electronic surveillance, working with
informants, and the execution of search and arrest warrants.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

7.    The Los Angeles County Sheriff's Department ("LASD")
and the FBI have been investigating an armed carjacking that
took place on February 5, 2025.  Two carjackers, who have been
identified as MARQUISE and MARKELL, pepper sprayed the victim,
hit the victim with an AR-15 style rifle, kicked the victim, and
held the victim at gunpoint.  MARQUISE and MARKELL stole the
victim's bag, which contained $900 and jewelry.  MARQUISE and
MARKELL used clothing, including ski masks, to conceal their
identities and fled the scene in the victim's vehicle, and a
vehicle parked adjacent to the victim's vehicle.

8.    There is probable cause to believe that MARQUISE AND
MARKELL committed the Subject Offense based on surveillance

footage, clothing they wore during the robbery, historical cell phone records, and the recovery of an AR-15 from MARQUISE's bedroom, that matches the rifle described in the carjacking.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

**A.    On February 5, 2025, MARQUISE and MARKELL Commit Armed Robbery in Palmdale, California**

9.    Based on my review of the LASD report, supplemental reports by LASD Detective Martin Alcaraz, a civilian cellphone video, LASD body worn camera footage, and communications with LASD, I learned the following:

10.    On February 5, 2025, at approximately 2:40 p.m., two victims, R.L. ("Victim 1") and D.E. ("Victim 2"), arrived at the "Long Horn Pavilion," an apartment complex located at 2311 Old Harold Road, Palmdale, California, located within the Central District of California. The victims arrived in a tan Chevy Malibu bearing California license plate number 7FOL998 (the "Victim Vehicle"), which was registered to Victim 2's girlfriend. When the victims arrived, they reversed into a parking stall next to a gray 4-door sedan (the "Suspect Vehicle").

11.    Once the victims parked, and Victim 1 exited the passenger side of the Victim Vehicle and was immediately hit on his head with the butt of a gun and was pepper sprayed.

12.    Victim 2 heard this commotion and turned around to see Victim 1 being pepper sprayed by a black male in a ski mask, who I believe to be MARQUISE. Victim 2 began to run away from the scene, when a second black male, who I believe to be MARKELL,

attempted to grab Victim 2. Victim 2 was able to get away and hide until the incident was over.

13.  MARQUISE pointed a black assault-rifle at Victim 1 and told Victim 1 to get on the ground. MARQUISE proceeded to kick Victim 1 while he was on the ground and ask how to open the truck of the Victim Vehicle. Victim 1 heard MARKELL say that they should just take "the whole fucking car."

14.  MARQUISE then kicked Victim 1 again and took Victim 1's Guess brand satchel bag, $900 dollars in U.S currency, an Apple iPhone 14, 24ct gold chain, two California driver's licenses, a dark colored wallet.

15.  MARQUISE entered the Victim Vehicle and drove away from the scene. The Suspect Vehicle followed the Victim Vehicle, and I believe the Suspect Vehicle was driven by MARKELL.

16.  During the incident, there was a civilian witness who partially recorded the carjacking and robbery with her cell phone. Deputy Ryan Velasquez obtained video footage of the incident from the witness. I reviewed the video footage and observed the following:[1]

     a.   One male Black adult, identified as MARQUISE, standing in front of Victim Vehicle holding a black AR-15 style rifle.

     b.   MARQUISE was wearing a black ski-mask and a black Nike hooded sweater. The black Nike hooded sweater had a light-colored swoosh across the chest and the "Nike" above the swoosh,

---

[1] The civilian video footage does not capture the entirety of the robbery, so the initial moments of the robbery (as described above) are not contained within the video footage.

4

black basketball style shorts, black athletic compression pants worn beneath the shorts, and black shoes. See photograph below.

 

     c.  Parked beside the Victim Vehicle was a charcoal-colored Toyota Camry ("Suspect Vehicle"). MARQUISE, with the AR-15 style rifle, opened the driver door of the Victim Vehicle and entered the driver seat. MARKELL entered the driver door of the Suspect Vehicle and entered the driver seat. The suspects fled the scene in both the Victim Vehicle and the Suspect Vehicle.

     d.  Once the Suspect Vehicle exited the parking stall, it fled south and out of view. As the Suspect Vehicle drove south, I observed the following identifiable features: The Suspect Vehicle was charcoal in color, the front windshield had a dark tinted strip across the top, the front windshield had two stickers on the lower driver side portion of the windshield, the front side windows and rear side windows were tinted, the

fuel door was black in color, the door handles were black in color, and the tail lights were tinted.

17.    On February 13, 2025, Deputy Alcaraz discovered a photograph of a Toyota Camry bearing California license plate number 8FJL493 (the "Toyota Camry"), registered to MARKELL at address 3143 Crowne Drive, Palmdale, California (the "Suspect Residence"), which matched the exact distinct features (tinted taillights, black fuel door, black door handles) of the Suspect Vehicle as captured in a photograph taken by Flock Safety's Automated License Plate Reader in the area of Rancho Vista Boulevard and Summerwind Drive, Palmdale, California on September 6, 2024.

18.    Detective Victor Felix researched law enforcement contacts involving the Toyota Camry and discovered a traffic stop initiated by LASD Deputy Thomas Onda on October 7, 2024. The traffic stop was conducted at the intersection of Division Street and Avenue Q-3, Palmdale, California.  During the traffic stop, MARQUISE was the driver and sole occupant of the vehicle. MARQUISE was subsequently cited for speeding.

19.    Detective Felix ran a criminal history check on MARQUISE and discovered that MARQUISE was arrested by California Highway Patrol ("CHP") on February 5, 2025 (the date of the robbery/carjacking) and was booked at the LASD Palmdale Station Jail at 8:15 p.m.  MARQUISE was arrested for an outstanding arrest warrant for an Assault with a Deadly Weapon in violation of California Penal Code 245(B) PC issued on November 14, 2024. During the arrest, MARQUISE was detained in the Toyota Camry.

20.    Detective Alcaraz reviewed the LASD Palmdale Station
Jail video footage at the date and time in which MARQUISE was
booked.  MARQUISE was dressed in clothing which matched the
identical clothing description as the Black male armed with an
AR-15 style rifle in the carjacking and robbery, which took
place earlier that day.  MARQUISE was wearing a black hooded
sweater with a red swoosh, with "Nike" written across the chest
in blue.  Below is a photo comparison of the jail footage of
MARQUISE and the carjacking/robbery witness footage.



21.    A further comparison of MARQUISE'S clothing in the
Palmdale Jail to the suspect with an AR-15 in the
carjacking/robbery can be seen in the photo below.  Both appear
to be wearing black basketball style shorts, black athletic
compression pants, and all black shoes.  The black athletic Nike
compression pants had a logo on the left leg.



22.   On February 8, 2025, Victim 2 received a message from
Victim 1, stating that Victim 1's phone was stolen during the
robbery and that it was pinging at the intersection of Tierra
Subida Avenue and Barrel Springs Road in Palmdale, California.
Victim 2 was able to locate Victim 1's phone and found the
Victim Vehicle abandoned approximately 1.32 miles away from the
recovered phone at 332 West Avenue S, Palmdale, California.
Inside the vehicle was a bottle of bleach, which did not belong
to the victims.  LASD personnel observed that bleach had been
poured throughout the vehicle.  The clothing that MARQUISE was
wearing in the above photo was booked into evidence by LASD
Detective Alcaraz.  While booking the clothing, Detective
Alcaraz observed bleach stains on the right arm, right shoulder,
and chest area of the sweatshirt and bleach stains on the right
leg area of the shorts.

**B.    Jail Calls Between MARQUISE and MARKELL Indicate Knowledge of the Carjacking**

23.    On February 13, 2025, Detective Felix listened to monitored jail calls of MARQUISE, who was in custody for the aforementioned CHP arrest.

a.    During a jail call from February 5, 2025, the day of the carjacking, at approximately 9:26 p.m., MARQUISE made an outgoing phone call to a phone number later identified as MARQUISE's girlfriend's number.  During the call, MARQUISE spoke with someone who he referred to as "KELL," and who I believe to be MARKELL.  MARQUISE asks MARKELL, "Where them things at? You got 'em?", and MARKELL responds by saying, "yeah".  Based on my training and experience, it is common for criminals to use indirect language to communicate about illegal activities or illegal possession to avoid being detected by law enforcement. Based on the date and time of the phone call, I believe MARQUISE is talking about the firearm used in the robbery and the belongings stolen from Victims 1 and 2.  During the phone call, MARQUISE asks MARKELL to provide him with MARKELL's phone number.  MARKELL provided phone number (661) 200-8507 ("MARKELL's phone number").

b.    During a jail call from February 6, 2025, at approximately 9:18 a.m., MARQUISE makes an outgoing phone call to a number identified as his mother's phone number.  At approximately 6:29 minutes into the conversation, MARQUISE's mother tells him she is cleaning her house.  She then stated, "there is bullets laying everywhere, bullets in the drawer y'all

can't be having that shit like that."  MARQUISE responded by
saying, "he had been telling them that and that he be picking
them up." During the same phone call MARQUISE asks to speak to
MARKELL.  Approximately 9 minutes into the phone call, the two
begin speaking about MARKELL's car, which was the car that
MARQUISE was arrested in the day prior, and the car that matched
the description of the Suspect Car.  The following was said:

| | |
|---|---|
| **MARQUISE:** | "Hey I saved your car for you ghetto… Before you guys got there… I was telling them like bro don't tow the car." |
| **MARKELL:** | "He wasn't trying to tow it though for real for real." |
| **MARQUISE:** | "Hey Loc said… I forgot to tell you… he said park it up in the garage for a couple days." |
| **MARKELL:** | "I'm already knowing." |
| **MARQUISE:** | "Hey my bad though brother foo. Bro I ain't gonna lie, it was me. I did some dumb shit… it's alright though you still got cho whip. We up right now. It's good." |

    24.  Based on my training and experience in robberies, it
is common for individuals to hide vehicles used to commit crimes
in secluded areas or covered areas such as garages in an attempt
to avoid detection by law enforcement.

    25.  In the same phone call, at approximately 10:20 minutes
in, the following dialogue happens between MARQUISE and MARKELL:

| MARKELL: | "Listen to what I'm gonna say brother…" |
|----------|------------------------------------------|
| MARQUISE: | "Go ahead I'm listening." |
| MARKELL: | "The scanner hot." |
| MARQUISE: | "On us?" |
| MARKELL: | "Quise!" (Short for Marquise) |
| MARQUISE: | "Hey brother, facial? Or nah?... facial? Or nah?" |
| MARKELL: | "Nah-Uh" |

a.    Based on my conversation with LASD Detective Alcaraz who has worked in the Antelope Valley region of Los Angeles County since 2016, he informed me of an Instagram account named AV Scanner News.  Residents of the Antelope Valley community often refer to the AV Scanner News as "The Scanner".  Detective Alcaraz further informed me that on February 5, 2025, The Scanner posted a photograph of the carjacking/robbery to their Instagram page.  The photograph was a still photo from the witness' video taken of the carjacking.

b.    During a jail call from February 6, 2025, at approximately 1:25 p.m., MARQUISE made an outgoing phone call to MARKELL's phone number.  During the phone call, MARKELL tells MARQUISE, "Why you go back outside? I told you go home."  Based on the fact that the carjacking/robbery took place approximately five hours before MARQUISE was arrested, I believe that MARKELL is scolding MARQUISE for driving around after they had just committed a carjacking.

**C. Cell Phone Records Place MARQUISE and MARKELL at the Carjacking Location and the Location Where the Stolen Vehicle was Recovered**

26. While reviewing MARKELL's criminal history, Detective Alcaraz noted that MARKELL had previously been arrested for an Assault with a Deadly Weapon and was held in LASD custody.. During that period of confinement, MARKELL made recorded jail calls which Detective Alcaraz obtained and reviewed. Through that review, Detective Alcaraz determined that MARKELL made several calls to MARQUISE at phone number (661) 779-4455 (MARQUISE's phone number).

27. On February 20, 2025, Detective Alcaraz authored a search warrant for call detail records with specialized location records for MARQUISE's phone number and MARKELL's phone number. On March 10, 2025, Detective Alcaraz received the results from T-Mobile and discovered the following:

a. On February 5, 2025, at approximately 2:07 p.m., the device using MARQUISE's phone number was interacting with a cell phone tower located near the intersection of Thomas Avenue and 25th Street, Palmdale. The photo below shows that the historical cell site data associated with MARQUISE's phone is consistent with his phone being in this area. This is the same geographic area that the carjacking took place. The red circle indicates the apartment complex where the carjacking occurred.



b.    On February 5, 2025, at approximately 2:50 p.m., the device using MARKELL's phone number, was interacting with a cell phone tower located at the intersection of Thomas Avenue and 25th Street, Palmdale. The photo below shows that the historical cell site data associated with MARKELL's phone is consistent with his phone being in this area. This is the same geographic area that the carjacking took place. The red circle in the photo on the left indicates the location of the apartments where the incident occurred. The civilian witness video of the incident was recorded at approximately 2:50 p.m. The photo on the right is a screenshot provided by the witness of the recorded time in which the video was being recorded.



    c.   On February 5, 2025, at approximately 3:47 p.m., the device using MARKELL's phone number, was interacting with a cell phone tower located at the intersection of 30th Street West and Rancho Vista Boulevard, Palmdale. The photo below shows that the historical cell site data associated with MARKELL's phone is consistent with his phone being in this area. This is the same geographic area of the Suspect Residence. The red circle on lower portion of photo below indicates the address of Suspect Residence.



      d.   On February 5, at approximately 7:41 p.m., the device using MARQUISE's phone number was interacting with a cell phone tower located near the intersection of Sierra Highway and Avenue R, Palmdale. The photo below shows that the historical cell site data associated with MARQUISE's phone is consistent with his phone being in this area. This is the same geographic area that MARQUISE was arrested by CHP on February 5, 2025, at 7:42 p.m. The red circle in the photo below indicates the intersection of Sierra Highway and Avenue R where MARQUISE was arrested.



D.   **MARQUISE and MARKELL are Arrested by LASD and a Search Warrant Executed at the Suspect Residence**

28.   On March 25, 2025, LASD executed California State Ramey Arrest warrants on MARQUISE and MARKELL and a California State Search warrant on the Suspect Residence.  The warrants were signed on March 20, 2025, by the Honorable Judge Scott A. Yang of the Superior Court, North Judicial District of Los Angeles County.

29.   MARKELL was arrested without incident during a traffic stop of the Suspect Vehicle.  In Detective Alcaraz's review of the body worn camera footage of the arrest, MARKELL was wearing a head covering, which was determined to be a ski-mask.  The ski-mask was not booked into evidence and was inadvertently released to MARKELL's mother as personal property.

30.   MARQUISE was observed in a blue Kia Accent bearing California license plate 8YCF910 with a female passenger.  A traffic stop was initiated, and MARQUISE fled the vehicle on

foot.  MARQUISE was ultimately taken into custody by LASD after hiding in the rear yard of a property located at 37820 Princley Court, Palmdale, California.

31.  During a discussion with Detective Alcaraz on April 8, 2025, Alcaraz informed me that the owner of the 37820 Princley Court residence called LASD several days after the arrest, reporting that they found a semi-automatic handgun in their backyard.  LASD recovered the firearm and noticed footprints in a cactus plant in the backyard.  Detective Alcaraz stated that officers took photographs of the footprints and matched them to MARQUISE's shoes during his arrest. MARQUISE's clothing also had thorns consistent with the cacti from the backyard.

32.  Detective Alcaraz told me that after MARKELL was released days after his arrest, MARKELL went to the 37820 Princley Court residence where MARQUISE had been hiding, and asked the owner of 37820 Princley Court if he could look in their backyard for jewelry that he might have lost when running back there days before.[2]

33.  During the search warrant executed at the Suspect Address, LASD recovered the following items from a bedroom with a prescription bottle issued to MARQUISE:

    a.  AR-15 short-barreled rifle (not loaded, but functional);

---

[2] MARKELL was not the individual that ran from LASD and hid in the backyard.  It is my belief that he was pretending to be his brother, to look for the firearm that LASD had already recovered.

17

      b.    AR-15 high-capacity rifle magazine containing 18 live rounds of .300 blackout caliber ammunition;

      c.    AR-15 high-capacity rifle magazine containing 22 live rounds of .223 caliber ammunition;

      d.    Three live rounds of 9mm caliber ammunition and one round of .300 blackout caliber ammunition;

      e.    One box of .40 caliber ammunition; and

      f.    AR-15 empty magazine.

34. Detective Alcaraz inspected the rifle and noted that it had similar characteristics as the rifle used in the carjacking to include:

      a.    The rifle was black in color;

      b.    The rifle had a short-barrel;[3]

      c.    The rifle had a pistol grip; and

      d.    The rifle didn't have a shoulder stock.

35. In a second bedroom with mail addressed to MARKELL, LASD seized the following evidence:

      a.    One Glock pistol magazine containing ten rounds of 9mm caliber ammunition.

**E.    The Stolen Vehicle Operates in and Affects Interstate Commerce**

36. On April 8, 2025, I conducted an open-source research on the Stolen Vehicle to determine where the vehicle was manufactured. Based on my research, the Stolen Vehicle, a 2015 Chevrolet Malibu, was an 8th generation of Chevrolet's Malibu model vehicle. The 8th generation Malibu was manufactured in the

---

[3] A short-barreled rifle is a rifle with a barrel length of less than 16 inches.

General Motors Fairfax Assembly Plant located in Kansas City, Kansas.

### V.  <u>CONCLUSION</u>

37.  For all the reasons described above, there is probable cause to believe that MARQUISE and MARKELL have violated 18 U.S.C. § 2119 (Carjacking).


/s/
Robert C. McElroy, Special Agent
Federal Bureau of Investigation


Subscribed to and sworn before me
on April 10, 2025.

HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE